United States District Court
Southern District of Texas

**ENTERED**

September 13, 2021
Nathan Ochsner, Clerk

UNITED  STATES  DISTRICT  COURT
SOUTHERN  DISTRICT  OF  TEXAS
MCALLEN  DIVISION

| | | |
|---|---|---|
| UNITED  STATES  OF  AMERICA | § | |
| | § | |
| VS. | § | CRIMINAL ACTION NO. 7:20-cr-01687-1 |
| | § | |
| HERNAN  GARCIA-HERNANDEZ | § | |

## OPINION  AND  ORDER

The Court now considers Movant Hernan Garcia-Hernandez's "Motion for Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A) (Compassionate Release) (*Pro Se* Prisoner)."[1] Movant used a form motion to request compassionate release. Under the First Step Act of 2018 and 18 U.S.C. § 3582(c)(1)(A)(i), "[a] court, on a motion by the BOP [Federal Bureau of Prisons] or by the defendant after exhausting all BOP remedies, may reduce or modify a term of imprisonment, probation, or supervised release after considering the factors of 18 U.S.C. § 3553(a), if 'extraordinary and compelling reasons warrant such a reduction.'"[2]

### I. LEGAL STANDARDS

#### a. Appointment of Counsel

Prisoners have no right to counsel in post-conviction proceedings,[3] including for post-sentencing motions requesting modification of the sentence imposed.[4] However, "[a]lthough a [movant] in a § 3582(c) motion does not have a statutory or constitutional right to appointment of

---

[1] Dkt. No. 36.

[2] *United States v. Chambliss*, 948 F.3d 691, 692 (5th Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)).

[3] *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("[T]he right to appointed counsel extends to the first appeal of right, and no further."); *United States v. Garcia*, 689 F.3d 362, 364 (5th Cir. 2012) ("[T]here is no constitutional entitlement to appointed counsel in postconviction relief proceedings . . . .").

[4] *United States v. Hereford*, 385 F. App'x 366, 368 (5th Cir. 2010) (reaffirming *United States v. Whitebird*, 55 F.3d 1007 (5th Cir. 1995)); *see United States v. Moore*, 400 F. App'x 851, 852 (5th Cir. 2010) (per curiam) ("There is no right to appointed counsel in a[n 18 U.S.C.] § 3582(c)(2) proceeding.").

counsel, the Court may appoint counsel in the interest of justice."[5]  Generally, the Court should appoint counsel in the interest of justice when the issue to be decided is significant, complex, or exceptional, or when the movant is demonstrably severely hampered in presenting the movant's argument or investigating relevant facts.[6]  When the movant's motion does "not involve complicated or unresolved issues," the interests of justice are unlikely to require appointment of counsel.[7]  "[T]he single issue of . . . entitlement to sentence reduction" is unlikely to be legally complex or call for appointment of counsel in the interest of justice,[8] especially when the movant appears capable of adequately presenting their argument.[9]

### b.  Timing and Exhaustion of Administrative Remedies

While the First Step Act authorizes a reduction in sentence—commonly referred to as compassionate release—Movant must first "fully exhaus[t] all administrative rights to appeal a failure of the Bureau of Prisons" to bring a motion for compassionate release on Movant's behalf, or 30 days must have lapsed since the warden of Movant's facility received Movant's administrative request, whichever is earlier.[10]  Movant can satisfy the exhaustion requirement in one of two ways: (1) availing of the Administrative Remedy Program,[11] or (2) submitting a

---

[5] *United States v. Rodriguez*, No. 2:10-CR-17,  2015 WL 13664966,  at *2 (S.D. Tex. Aug. 20, 2015) (Jack, J.) (citing *United States v. Robinson*, 542 F.3d 1045,  1051–52 (5th Cir. 2008) (appointing counsel in the interest of justice)).

[6] *See United States v. Molina-Flores*, No. 3:16-CR-130-N  (19),  2018 WL 10050316,  at *2 (N.D. Tex. Feb. 13, 2018) (collecting cases).

[7] *United States v. Willard*, 481 F. App'x 915, 917 (5th Cir. 2012); *accord United States v. Lewis*, 400 F. App'x 899, 900 (5th Cir. 2010) (per curiam).

[8] *See Rodriguez*, 2015 WL 13664966,  at *2; *Baranowski v. Hart*, 486 F.3d 112, 126 (5th Cir. 2007),  *cited in United States v. Rodriguez*, 695 F. App'x 82, 83 (5th Cir. 2017) (per curiam); *United States v. Drayton*, No. CR 10-20018-01-KHV,  2020 WL 2572402,  at *1 (D. Kan. May 21, 2020) ("[A] claim for compassionate release is not particularly complex factually or legally.").

[9] *See United States v. Wilfred*, No. CR 07-351,  2020 WL 4698993,  at *1 (E.D. La. Aug. 13, 2020) (citing *United States v. Delco*, No. 09-57,  2020 WL 4569670,  at *2–3 (E.D. La. Aug. 7, 2020) & *United States v. Hames*, No. 09-39,  2020 WL 3415009,  at *1 (E.D. Tex. June 19, 2020)).

[10] 18 U.S.C. § 3582(c)(1)(A)  (emphasis added); *see United States v. Garrett*, No. 20-61083,  2021 WL 4099601,  at *2 (5th Cir. Sept. 9, 2021) ("[A] prisoner may wait 30 days after filing his request and—whether the BOP has ruled on the request or not—he is free to file a motion in the district court."); *United States v. Jenkins*, No. 4:15-CR-3079, 2020 WL 2814437,  at *2 (D. Neb. May 26, 2020) (Gerrard, C.J.).

[11] *See* 28 C.F.R. §§ 542.10–.19

compassionate release request to the warden,[12] in accordance with the requirements under those respective programs and regulations.[13] "Courts have recognized these two options impose a mandatory requirement that a defendant submit a request to the warden of [the] facility before filing in court."[14] Furthermore, "[t]he statute is clear that the 30 day clock starts when the Warden receives the letter, not when the inmate sends it."[15] The exhaustion requirement is "mandatory" and that "[t]hose who seek a motion for compassionate relief under the First Step Act must first file a request with the BOP" and cannot obtain relief without doing so.[16] This exhaustion requirement applies to new arguments or grounds for compassionate release developed after an earlier request for compassionate release.[17] If Movant does not exhaust the administrative process, the Court cannot grant relief.[18]

### c.   Extraordinary and Compelling Reasons to Grant Compassionate Release

"Prior to the passage of the First Step Act [of 2018], only the Director of the Bureau of Prisons (BOP) could file a motion for compassionate release, and that very rarely happened. [The First Step Act has] the intent of 'increasing the use and transparency of compassionate release.'"[19]

---

[12] See 28 C.F.R. § 571.61.

[13] See FED. BUREAU OF PRISONS, COMPASSIONATE RELEASE/REDUCTION IN SENTENCE: PROCEDURES FOR IMPLEMENTATION OF 18 U.S.C. §§ 3582 AND 4205(g), document no. 5050.50, https://www.bop.gov/policy/progstat/5050_050_EN.pdf.

[14] United States v. Crinel, No. CR 15-61, 2020 WL 955054, at *4 (E.D. La. Feb. 27, 2020) (quotation omitted).

[15] United States v. Miller, No. 2:16-CR-00269-BLW, 2020 WL 2202437, at *1, 2020 U.S. Dist. LEXIS 80817, at *3 (D. Idaho May 6, 2020).

[16] United States v. Franco, 973 F.3d 465, 468–69 (5th Cir.), cert. denied, No. 20-5997, 141 S. Ct. 920 (2020) (mem.); see United States v. Edwards, 456 F. Supp. 3d 953, 963, 966 (M.D. Tenn. 2020) (collecting cases rejecting the proposition that the administrative exhaustion requirement can be waived); United States v. Britton, 473 F. Supp. 3d 14, 21–22 (D.N.H. 2020) (holding the exhaustion requirement is not subject to equitable or exigent exceptions).

[17] United States v. Rivas, 833 F. App'x 556, 558 (5th Cir. 2020).

[18] See Ross v. Blake, 136 S. Ct. 1850, 1857 (2016) ("[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion."); Booth v. Churner, 532 U.S. 731, 741 n.6 (2001) ("[W]e stress the point . . . that we will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise."); United States v. Orellana, No. 4:17-cr-0220, 2020 WL 1853797, at *1 (S.D. Tex. Apr. 10, 2020) (Ellison, J.) ("Because Defendant has not attempted to exhaust his administrative rights, the Court is unable to grant compassionate release.").

[19] United States v. Gutierrez, No. CR 05-0217 RB, 2019 WL 1472320, at *1 (D.N.M. Apr. 3, 2019) (footnote omitted) (quoting First Step Act, Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239 (Dec. 21, 2018)); see United

The First Step Act authorizes a sentence reduction when "extraordinary and compelling reasons warrant such a reduction" with due consideration to sentencing factors, such as the seriousness of an inmate's offense and the need to prevent recidivism.[20] The statute itself does not define what constitutes "extraordinary and compelling reasons,"[21] but the words used indicate the reasons must be "[b]eyond what is usual, customary, regular, or common" and involve so great a need that irreparable harm or injustice would result if the requested relief is not granted.[22] The Court must "provide specific factual reasons, including but not limited to due consideration of the § 3553(a) [sentencing] factors, for its decision" on whether to grant a reduction in sentence,[23] but the Court's opinion need not be exhaustive or extensive,[24] and necessarily involves the exercise of judgment in weighing sentencing factors.[25] Although some courts have considered their determination of whether to grant a sentencing determination bound by the United States Sentencing Commission Guidelines,[26] the Sentencing Guidelines are not binding on this Court generally[27] or with respect

---

States v. Redd, 444 F. Supp. 3d 717, 725 (E.D. Va. 2020) (the First Step Act "eliminated the BOP Director's role as the *exclusive* channel through which a sentence reduction could be considered by courts").

[20] 18 U.S.C. § 3582(c)(1)(A)(i) (citing 18 U.S.C. § 3553(a)); *see United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020).

[21] *Crowe v. United States*, 430 F. App'x 484, 485 (6th Cir. 2011) (holding the statute does not "define—or place any limits on—what 'extraordinary and compelling reasons' might warrant such a reduction").

[22] *See United States v. Cantu*, 423 F. Supp. 3d 345, 352 (S.D. Tex. 2019) (Marmolejo, J.).

[23] *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020) (footnote omitted).

[24] *United States v. Pina*, 846 F. App'x 268, 269 (5th Cir. 2021); *United States v. McLin*, 840 F. App'x 804, 804–05 (5th Cir. 2021) (per curiam) (citing *Rita v. United States*, 551 U.S. 338, 356 (2007)).

[25] *Cf. United States v. Coats*, No. 20-10419, 2021 WL 2372447, at *2 (5th Cir. June 9, 2021) (per curiam) (quoting *United States v. Chambliss*, 948 F.3d 691, 694 (5th Cir. 2020) and citing *United States v. Nguyen*, 854 F.3d 276, 283 (5th Cir. 2017)) (holding that disagreement with the Court's evaluation of sentencing factors does not support reversal); *United States v. Crawford*, 839 F. App'x 916, 917 (5th Cir. 2021) (per curiam) ("Crawford's mere disagreement with the district court's weighing of the sentencing factors is not sufficient to demonstrate abuse of discretion.").

[26] *See* 28 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."); *United States v. Avery*, No. 2:07-cr-20040-2, 2020 WL 3167579, at *5, 2020 U.S. Dist. LEXIS 104951, at *11 (W.D. Tenn. June 9, 2020) (collecting cases).

[27] *United States v. Gagne*, 451 F. Supp. 3d 230, 234 (D. Conn. 2020) (citing *United States v. Booker*, 543 U.S. 220 (2005)) ("The Court recognizes that 'extraordinary and compelling' circumstances may exist outside of those circumstances delineated by the U.S. Sentencing Commission, given the advisory nature of the guidelines . . . ."); *United States v. Gonzales*, No. SA-05-CR-561-XR, 2019 WL 5102742, at *3 (W.D. Tex. Oct. 10, 2019) ("Inasmuch

to compassionate release.[28] The Court's decision is unfettered by the Sentencing Guidelines or the commentary to the Sentencing Guidelines, and is instead bound only by the language of 18 U.S.C. § 3582(c)(1)(A)(i) and "the sentencing factors in [18 U.S.C. §] 3553(a)."[29] The nonbinding Sentencing Guidelines may be informative criteria,[30] but the Court makes its own determination.[31]

The Coronavirus Disease 2019 (COVID-19) pandemic in and of itself and its relationship to prisons or associated fears of contracting the illness do not warrant compassionate release,[32] but of course "[i]t would be odd to deny [compassionate release] to inmates who plainly proved an unsafe, life-threatening condition in their prison on the ground that nothing yet had happened to them."[33]   Accordingly, Movant must identify individualized extraordinary and compelling reasons

---

as the Sentencing Guidelines are no longer mandatory, it seems inconsistent to hold that judges are nevertheless bound by U.S.S.G. § 1B1.13. But with regard to all sentencing decisions, a judge should consider the Guidelines.").

[28] *See United States v. Aruda*, 993 F.3d 797, 801–02 (9th Cir. 2021) (collecting cases holding that the Sentencing Commission has no applicable policy statement governing compassionate release).

[29] *United States v. Shkambi*, 993 F.3d 388, 393 (5th Cir. 2021); *accord United States v. Jones*, 980 F.3d 1098, 1111 (6th Cir. 2020) ("In cases where incarcerated persons file motions for compassionate release, federal judges may skip step two of the § 3582(c)(1)(A) inquiry and have full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13."). *But see United States v. Willingham*, 2019 WL 6733028, at *2, 2019 U.S. Dist. LEXIS 212401 (S.D. Ga. Dec. 10, 2019).

[30] *See* U.S. SENT'G GUIDELINES MANUAL § 1B1.13 application notes (U.S. SENT'G COMM'N 2018) (including the inmate's medical condition, family circumstances, and age as relevant factors).

[31] *Shkambi*, 993 F.3d at 393; *see Ward v. United States*, No. 20-10836, 2021 WL 3780085, at *3 (5th Cir. Aug. 26, 2021) (citing *United States v. Cooper*, 996 F.3d 283, 289 (5th Cir. 2021)) ("[A] district court errs by treating Section 1B1.13 as binding."); *United States v. Beck*, 425 F. Supp. 3d 573, 579 (M.D.N.C. 2019) ("While the old policy statement provides helpful guidance, it does not constrain the Court's independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction.").

[32] *United States v. Koons*, 455 F. Supp. 3d 285, 291 (W.D. La. 2020) ("The Court stresses that the rampant spread of the coronavirus and the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances. Rather, those circumstances are applicable to all inmates who are currently imprisoned and hence are not unique to any one person. The Court cannot release every prisoner at risk of contracting COVID-19 because the Court would then be obligated to release every prisoner."); *United States v. Williams*, No. 4:16-CR-120 (2), 2020 WL 3078599, at *3 (E.D. Tex. June 9, 2020) (quoting *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020)) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."); *United States v. Clark*, 451 F. Supp. 3d 651, 656 (M.D. La. 2020) ("Defendant cites no authority for the proposition that the *fear* of contracting a communicable disease warrants a sentence modification."); *United States v. Eberhart*, 448 F. Supp. 3d 1086, 1090 (N.D. Cal. 2020) ("[A] reduction of sentence due solely to concerns about the spread of COVID-19 is not consistent with the applicable policy statement of the Sentencing Commission . . . ."); *United States v. Dodge*, No. 17-323-01, 2020 U.S. Dist. LEXIS 119493, at *10–11 (W.D. La. July 6, 2020).

[33] *Helling v. McKinney*, 509 U.S. 25, 33 (1993).

for compassionate release,[34] such as a combination of risk-enhancing medical conditions[35] or advanced age and associated impediments.[36] Furthermore, "[t]he law closely guards the finality of criminal sentences against judicial change of heart"[37] and an increased individual vulnerability to illness persists whether or not an inmate is incarcerated, so Movant must show some indicia that a sentence reduction is the better course than continued imprisonment,[38] but the Court is mindful that "courts around the country have recognized that the risk of COVID-19 to people held in jails

---

[34] *See generally United States v. Elias*, 984 F.3d 516, 521 (6th Cir. 2021) ("Relying on official guidelines from the CDC is a common practice in assessing compassionate-release motions."); *United States v. Blevins*, 832 F. App'x 192, 192 (4th Cir. 2020) (per curiam) (quoting *United States v. Feiling*, 453 F. Supp. 3d 832, 841 (E.D. Va. 2020)) ("In the context of the COVID-19 outbreak, courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility.").

[35] *See, e.g., United States v. Muniz*, No. 4:09-CR-0199-1, 2020 U.S. Dist. LEXIS 59255, at *5 (S.D. Tex. Mar. 30, 2020) (Ellison, J.) (granting compassionate release to a prisoner with end stage renal disease, diabetes, arterial hypertension, and a mobility handicap); *United States v. Foster*, No. 1:14-cr-324-02, 2020 U.S. Dist. LEXIS 82985, at *9 (M.D. Pa. Apr. 3, 2020) (granting compassionate release to a prisoner with chronic lung disease); *United States v. Rodriguez*, 451 F. Supp. 3d 392, 401 (E.D. Pa. 2020) (granting compassionate release to a prisoner with diabetes, neuropathy, hypertension, and liver abnormalities indicating disease); *United States v. Pabon*, No. 17-165-1, 2020 U.S. Dist. LEXIS 78245, at *1 (E.D. Pa. May 4, 2020) (granting compassionate release to a 54-year-old prisoner who "suffers from diabetes, hypertension, hemophilia, atopic dermatitis, gastroesophageal reflux disease, peptic ulcer, and diverticulitis").

[36] *See United States v. Cantu-Rivera*, No. H-89-204, 2019 U.S. Dist. LEXIS 105271, at *3 (S.D. Tex. June 24, 2019) (Lake, J.) (granting compassionate release to a 69-year-old prisoner with "arthritic conditions in multiple joints, cataracts, diabetes, prostrate conditions" who had already served 30 years in jail and indicated successful rehabilitation); *United States v. McGraw*, No. 2:02-cr-00018-LJM-CMM-01, 2019 U.S. Dist. LEXIS 78370, at *3 (S.D. Ind. May 9, 2019) (granting compassionate release to a 72-year-old prisoner with "Type II Diabetes, insulin-dependent, with peripheral neuropathy; hyperlipidemia; emphysema; chronic kidney disease stage III; Hepatitis C type 1A (treatment completed and no sign of disease noted); and[] chronic pain" and uncontrollable diarrhea); *United States v. Dunlap*, 458 F. Supp. 3d 368, 370 (M.D.N.C. 2020) (granting compassionate release to a 77-year-old prisoner with "hypertension, severe thyroid problems, arthritis, acute nerve pain, muscle wasting and atrophy, as well as a bladder disorder" and need for an ambulatory walker); *cf. United States v. Ebbers*, 432 F. Supp. 3d 421, 428 (S.D.N.Y. 2020) ("Because the Age of Defendant Note does not mention self-care, a substantially diminished ability to provide self-care is impliedly not required when the defendant is relying on his age as the basis for his requested relief.").

[37] *United States v. Goodwyn*, 596 F.3d 233, 235 (4th Cir. 2010) (quotation omitted) (collecting cases).

[38] *See United States v. Clark*, 451 F. Supp. 3d 651, 656–57 (M.D. La. 2020) (collecting cases discussing the movant's failure to show that the BOP plan was inadequate in the context of movant's demonstration of extraordinary and compelling reasons for a sentence reduction). *But see United States v. Atkinson*, No. 2:19-CR-55 JCM (CWH), 2020 WL 1904585, at *3 (D. Nev. Apr. 17, 2020) (noting "obvious shortcomings" in the BOP action plan to address COVID-19 and therefore diminishing the hurdle an inmate must clear to obtain compassionate release); *United States v. Millage*, 464 F. Supp. 3d 1218, 1223–24 (D. Or. 2020) (holding that the BOP's failure to conduct widespread COVID-19 testing, even in the absence of symptomatic inmates, did not defeat a motion for compassionate release).

and prisons is significantly higher than in the community, both in terms of risk of transmission, exposure, and harm to individuals who become infected."[39]

Even if the Court does find "extraordinary and compelling reasons" to warrant a sentence reduction, Movant will not necessarily be entitled to compassionate release. The Court has a duty to[40] "conside[r] the factors set forth in section 3553(a) to the extent that they are applicable."[41]  For example, the Court considers "the nature and circumstances of the offense and the history and characteristics of the defendant"[42] and "the need to protect the public from further crimes."[43] "Eligibility for resentencing under the First Step Act, however, does not equate to entitlement. The district court has broad discretion in deciding whether to resentence."[44]  For example, when an outsize proportion of the sentence imposed remains to be served, such as 23 months remaining on a 27-month custodial sentence, a reduction in sentence likely contravenes the § 3553(a) factors and will preclude compassionate release.[45]

---

[39] *United States v. Williams*, No. 3:04-cr-95/MCR, 2020 U.S. Dist. LEXIS 63824, at *4 (N.D. Fla. Apr. 1, 2020) (quotation omitted); *see United States v. Stephens*, 447 F. Supp. 3d 63, 65 (S.D.N.Y. 2020) (citing Joseph A. Bick, *Infection Control in Jails and Prisons*, 45.8 CLINICAL INFECTIOUS DISEASES 1047 (2007), https://doi.org/10.1086/521910 (finding increased vulnerability to certain infectious diseases among the incarcerated population)) ("[I]nmates may be at a heightened risk of contracting COVID-19 should an outbreak develop."); Brendan Saloner et al., *COVID-19 Cases and Deaths in Federal and State Prisons*, 324.6 J. AM. MED. ASS'N 602 (2020), https://jamanetwork.com/journals/jama/article-abstract/2768249 ("The COVID-19 case rate for prisoners was 5.5 times higher than the US population case rate of 587 per 100,000 [in June 2020]."); *United States v. Jackson*, No. 4:14-CR-00576, 2020 WL 1955402, at *4 (S.D. Tex. Apr. 23, 2020) (Ellison, J.) (citing Timothy Williams et al., *'Jails Are Petri Dishes': Inmates Freed as the Virus Spreads Behind Bars*, N.Y. TIMES, Nov. 30, 2020, https://www.nytimes.com/2020/03/30/us/coronavirus-prisons-jails.html) ("The Court is also very aware that prisons are particularly conducive to the spread of COVID-19."); *United States v. Burrill*, 445 F. Supp. 3d 22, 26 (N.D. Cal. Apr. 10, 2020) ("Federal correctional institutions, which had reported zero COVID-19 cases only weeks ago, and despite the steps the BOP has taken to contain the disease within its facilities, are now reporting numerous virus-related deaths.").

[40] *Ward v. United States*, No. 20-10836, 2021 WL 3780085, at *4 (5th Cir. Aug. 26, 2021).

[41] 18 U.S.C. § 3582(c)(1)(A); *see United States v. Smith*, 828 F. App'x 215, 216 (5th Cir. 2020) (per curiam) (holding that the district court sufficiently articulated reasons for denying a prisoner's motion by discussing the sentencing factors).

[42] 18 U.S.C. § 3553(a)(1).

[43] *United States v. Glenewinkel*, 831 F. App'x 158, 159 (5th Cir. 2020) (per curiam).

[44] *United States v. Whitehead*, 986 F.3d 547, 550 (5th Cir. 2021) (quotations and citations omitted).

[45] *See United States v. Green*, No. 2:11-CR-00468-TLN, 2020 WL 3047840, at *3 (E.D. Cal. June 8, 2020); *United States v. Garcia*, 847 F. App'x 262 (5th Cir. 2021) ("Given the nature and circumstances of Garcia's alien transportation offense and that he had served less than half of his sentence, the district court did not abuse its discretion in determining that the § 3553(a) factors weighed against a compassionate release sentence reduction.");

Lastly, the Court does not consider whether to modify a sentence imposed to a sentence of home confinement. Section 603(a) of the First Step Act of 2018 leaves the discretion to release a prisoner to home confinement exclusively with the United States Attorney General.[46] Furthermore, "[d]ecisions regarding prisoner designations, including release to home confinement, are reserved exclusively to BOP, as they involve specialized determinations uniquely within its expertise."[47]

## II. ANALYSIS

The Court first turns to Movant's request for appointment of counsel.[48] Movant submitted his request for compassionate release to the warden[49] and to the Court,[50] included a discussion of his medical ailments[51] and records,[52] and did not elaborate on his need for appointed counsel. Accordingly, the Court does not find that the single issue of whether Movant is entitled to a reduction in sentence calls for appointment of counsel.[53] The Court also does not find that Movant

---

*United States v. Hoopes*, No. CR 16-509-02, 2020 WL 6889211, at *5 (E.D. Pa. Nov. 24, 2020) ("Mr. Hoopes has also not served the bulk of his sentence. Accounting for his credit for good conduct, he has only served approximately 16 months, or not quite 30%, of his 54-month sentence. An early release would be contrary to the § 3553(a) factors."); *United States v. Shulick*, No. CR 16-428, 2020 WL 3250584, at *5 (E.D. Pa. June 16, 2020) ("While defendant has served 19 months thus far for his crimes, there is still a substantial amount of time remaining in defendant's 60-month sentence. Releasing defendant now would cut his current sentence by well over half and would not appropriately reflect the nature and circumstances of his offenses, promote just punishment, or afford adequate deterrence to criminal conduct."); *United States v. Hasan-Hafez*, No. 16 CR. 221-2 (KPF), 2020 WL 2836782, at *5 (S.D.N.Y. June 1, 2020) ("It would undercut the § 3553(a) factors for the Court to allow Mr. Hasan-Hafez to serve just 13 months of a 45-month sentence.").

[46] *See* Pub. L. No. 115-391, § 603(a), 132 Stat. 5194, 5238 (Dec. 21, 2018); 34 U.S.C. § 60541(g); *United States v. Curry*, No. CR 6:06-082-DCR, 2019 WL 508067, at *1 (E.D. Ky. Feb. 8, 2019) ("Because the First Step Act gives the *Attorney General* the discretion to determine if and when home confinement is appropriate, this Court does not have the authority to grant the requested relief."); *Burg v. Nicklin*, No. EP-19-CV-24-FM, 2019 WL 369153, at *3 (W.D. Tex. Jan. 29, 2019) ("The Attorney General—and by delegation the BOP—has exclusive authority and *discretion* to designate the place of an inmate's confinement.").

[47] *United States v. Adcock*, No. CR 3:19-00106, 2020 WL 2043811, at *3 (W.D. La. Apr. 28, 2020) (citing 18 U.S.C. § 3621(b)).

[48] Dkt. No. 36 at 6, § V.

[49] Dkt. No. 36-2 at 5.

[50] Dkt. No. 36.

[51] *Id.* at 5.

[52] Dkt. No. 36-2 at 3.

[53] *See supra* note 8.

is severely impeded in presenting his argument.[54] The Court **DENIES** Movant's request for appointed counsel.

The Court next turns to the issue of mandatory administrative exhaustion. Movant included an electronic mail message, dated August 10, 2021, in which he requests compassionate release due to COVID-19 and his pre-existing medical conditions.[55] On August 24th, the warden signed a response in which he denies compassionate release and instructs Movant to seek relief directly from the courts.[56] However, the warden's denial was not actually a final administrative decision.[57] Nevertheless, Movant's motion for compassionate release was not filed in this Court until September 10th, which is greater than thirty days since Movant's August 10th administrative request for compassionate release. Accordingly, because more than thirty days have elapsed since Movant's request,[58] the Court holds that Movant is entitled to be considered by the Court for compassionate release.

The Court next turns to the grounds to grant compassionate release. Movant explains that he suffers from "'Severe Asma' with Asleep Aminia that if coming in contack with 'DELTA INFECTION' PANDEMIC can lead to severe medical problem and possibly death [sic]."[59] Movant further explained that he takes "Asmanex mometasome Furoate inhalation powder, and Proair, HFA (albuterol sulfate) [sic]."[60] However, the Court was already aware that Movant reported "suffering from asthma and sleep apnea and takes medication for said conditions" and that he slept with a "Continuous Positive Airway Pump (CPAP) machine to aid in his breathing

---

[54] *See supra* note 6.
[55] Dkt. No. 36-2 at 5.
[56] *Id.* at 4.
[57] *See* 28 C.F.R. § 571.63.
[58] *See supra* note 10.
[59] Dkt. No. 36 at 5.
[60] Dkt. No. 36-1 at 4.

during sleep" to treat his sleep apnea at the time of sentencing on February 11, 2021.[61] Although the Centers for Disease Control and Prevention points out that severe asthma makes a person "more likely to be hospitalized from COVID-19,"[62] the Court does not find Movant's severe but well-treated asthma alone, especially when the Court was already well-aware of Movant's asthma condition and the COVID-19 pandemic at the time of sentencing earlier this year, to constitute an extraordinary and compelling reason warranting compassionate release.[63] Furthermore, sleep apnea is simply not a risk-enhancer for severe illness from COVID-19.[64] Even if it was, Movant's sleep apnea also appears to be well-treated.[65] The Court holds that Movant has not shown extraordinary and compelling reasons that warrant compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i).

Even if the Court found extraordinary and compelling reasons to grant compassionate release, the Court would deny relief because of the 18 U.S.C. § 3553 sentencing factors. Movant has a significant rap sheet, including 2003, 2005, 2012, 2015, and 2019 deportations to Mexico.[66] Movant's present sentence of 10 years in prison, of which he has served less than 1 year, was in light of his repeated flouting of United States immigration laws and new conviction for being found in the United States after previous deportations.[67] The Court holds that granting compassionate release so early would contravene the § 3553(a) sentencing factors, particularly the need to "to reflect the seriousness of the offense, to promote respect for the law, and to provide

---

[61] *See* Dkt. No. 20 at 10, ¶ 39.
[62] *People with Moderate to Severe Asthma*, CTRS. FOR DISEASE CONTROL AND PREVENTION (Apr. 7, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/asthma.html.
[63] *See supra* note 22.
[64] *See People with Certain Medical Conditions*, CTRS. FOR DISEASE CONTROL AND PREVENTION (Aug. 20, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.
[65] *See supra* note 61.
[66] Dkt. No. 20 at 6–8, ¶¶ 29–32.
[67] Dkt. No. 26.

just punishment for the offense."[68] For the foregoing reasons, Movant's motion for compassionate release[69] is **DENIED** in its entirety.

IT IS SO ORDERED.

DONE at McAllen, Texas, this 13th day of September 2021.

_____
Micaela Alvarez
United States District Judge

---

[68] 18 U.S.C. § 3553(a)(2)(A);  *see supra* note 45.
[69] Dkt. No. 36.